IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CHRISTOPHER MOORE and
AUSTIN HILL, on behalf of themselves
and those similarly situated,

    Plaintiffs,

vs.

TAKE 5, LLC and DRIVEN BRANDS
SHARED SERVICES, LLC,

    Defendants.

Case No.:3:23-cv-429

**COLLECTIVE ACTION**

**COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT AND DEMAND FOR JURY TRIAL**

Plaintiffs, CHRISTOPHER MOORE ("MOORE") and AUSTIN HILL ("HILL") sue Defendants, TAKE 5, LLC ("TAKE 5") and DRIVEN BRANDS SHARED SERVICES, LLC ("DRIVEN BRANDS") (collectively "Defendants"), and state:

**NATURE OF ACTION**

1. Plaintiffs bring this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*.("FLSA").

2. Plaintiffs allege Defendants violated 29 U.S.C. § 207 of the FLSA by failing to pay Plaintiffs and other similarly situated employees overtime wages.

3. Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiffs bring this action on behalf of themselves and other similarly situated employees, to recover unpaid overtime compensation, plus liquidated damages.

4. Plaintiffs, and other employees similarly situated, were employed by Defendants as Shop Managers at Defendants Take 5 Oil Change stores.

5. The overtime violations giving rise to this action are the result of a common policy, practice, plan, or scheme to avoid the payment of overtime wages to Shop Managers.

## PARTIES

6. Plaintiff MOORE has been employed as a Shop Manager in Defendants' Tallahassee, Florida store locations since February 2019 when Defendants acquired MOORE's previous employer, Sunshine Car Care, LLC. MOORE is currently employed by Defendants. Plaintiff MOORE's Notice of Consent is attached as **Exhibit A**.

7. Plaintiff HILL was employed as a Shop Manager in Defendants' Tallahassee, Florida and Prattville, Alabama store locations from February 2019 until August 2022. Plaintiff HILL's Notice of Consent is attached as **Exhibit B.**

8. TAKE 5 is a North Carolina Limited Liability Company with its principal place of business located at 440 S. Church St., Ste. 700, Charlotte, NC 28202.

9. DRIVEN BRANDS is a Delaware Limited Liability Company with its principal place of business located at 440 S. Church St., Ste. 700, Charlotte, NC 28202

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the FLSA.

11. The Western District of North Carolina is the proper venue for this action because the Defendants share a principal place of business and headquarters within this judicial district.

## SINGLE EMPLOYER AND INTEGRATED ENTERPRISE

12. Although separate entities, TAKE 5 and DRIVEN BRANDS are a single employer and integrated enterprise for all purposes under the FLSA.

13. TAKE 5 and DRIVEN BRANDS share headquarters at the same location in Charlotte, NC.

14. At all times material, TAKE 5 and DRIVEN BRANDS, shared a common business purpose, to provide "quick lube" oil changes at store locations throughout the United States. To accomplish this common purpose, Defendants collectively manage and share a workforce, operations, and policies and procedures.

15. Pursuant to 29 U.S.C. 203(r)(1) of the FLSA, TAKE 5 and DRIVEN BRANDS are a single "enterprise." Both companies perform "related activities" through unified operations and are under common ownership, management, and control.

16. At all times material, TAKE 5 and DRIVEN BRANDS were the single employer of Plaintiffs and those similarly situated based on (i) common management; (ii) interrelated operations; (iii) centralized labor relations; (iv) common ownership and (v) common financial control.

## FLSA COVERAGE

**Enterprise Coverage**

17. At all times material to this action, Defendants were Plaintiffs' "employer" within the meaning of the FLSA.

18. At all times material, Defendants employed at least two or more employees who handled, sold, or otherwise worked with goods or materials moved through interstate commerce.

19. At all times material, Defendants had gross sales volume of at least $500,000.00 annually.

20. At all times material, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

21. Plaintiffs and the putative class members are Defendants' current and past Shop Managers defined as follows:

    **All Shop Managers who worked for Defendants at any time in the three (3) years preceding the filing of the Complaint who worked over forty (40) hours in any workweek and were not paid overtime wages.**

22. At any given time, Defendants employ approximately 800 Shop Managers. These Shop Managers perform the same or similar job duties as Plaintiffs, and under the same compensation policy as Plaintiffs.

23. Plaintiffs and the other Shop Managers in the putative class performed the same or substantially similar job duties.

24. Plaintiffs and the other putative class members were paid under the same compensation structure giving rise to the overtime violations.

25. Plaintiffs and the other Shop Managers were paid a base salary, plus a commission on sales for certain items.

26. Plaintiffs and the other Shop Managers regularly worked more than forty (40) hours in a workweek. In fact, Defendants' written policy requires Shop Managers to work a minimum of 55 hours per week.

27. Defendants did not pay overtime wages to Plaintiffs or the other Shop Managers.

28. Defendants classified Plaintiffs and the other Shop Managers as "exempt." However, Plaintiffs and the other Shop Managers did not qualify for the FLSA executive exemption, or any other exemption, because their primary duties were not managerial but instead were manual labor.

29. These common policies or practices resulting in overtime violations uniformly applied to Plaintiffs and the similarly situated Shop Managers.

## FACTS

**History of TAKE 5**

30. In 1984, TAKE 5 was founded in Metairie, Louisiana as a traditional oil change store.

31. About a decade later, TAKE 5 became one of the first stay-in-your-car oil change locations allowing customers to receive a drive-through oil change.

Using this model, the business continued to grow by adding approximately 65 store locations over the next 20 years.

32. In 2016, TAKE 5 was acquired by Driven Brands, Inc., a private equity firm[1] specializing in automotive repair brands.

33. Today, TAKE 5 operates approximately 800 store locations across 27 states.

34. TAKE 5 provides oil changes, filter, and windshield wiper replacements.

35. Defendant DRIVEN BRANDS is the management company responsible for handling human resources, payroll, and other management functions of Driven Brands, Inc.'s subsidiaries, including TAKE 5.

**TAKE 5 Operations**

36. Each TAKE 5 location is meant to employ and operate with a group of employee technicians and one shop manager.

37. The Shop Manager is the only salaried position in each store.

38. TAKE 5's corporate office allots each store a limited number of labor hours each week to keep the store open and operating. The labor hour caps only apply to hourly employees. The limited number of labor hours results in the Shop Manager being required to work even longer hours than the scheduled 55. During these hours the Shop Managers are performing non-managerial manual labor nearly the entire time.

---

[1] Driven Brands became a publicly traded company on January 15, 2021.

39. The store employees rotate three positions as they are "rolling cars" throughout the day. When a car comes into a bay, the employees will take either the "pit," the "hood," or the "service writer" position on the car. As cars are finished or arrive in another bay, the employees rotate to the next position, taking turns in each role.

40. The Shop Manager is required to be "on the floor," assuming one of the three positions (pit, hood, or service writer) at all times while the store is open.

41. If the store's allotment of labor hours is limited or if an employee calls off, the Shop Manager is frequently required to work with only one hourly employee for an entire day. When this happens, the Shop Manager and other employee will rotate each car between the service writer position and the pit/hood roles, for the entire day.

**Shop Manager Hours and Compensation**

42. On average, Plaintiffs and the other Shop Managers work approximately 12.5 hours per day, six days per week. In the three years preceding the filing of the Complaint, Plaintiffs and the other Shop Managers worked more than 40 hours per week virtually every week.

43. TAKE 5 stores are open 7 AM – 7 PM, Monday through Saturday, and 9 AM – 5 PM on Sundays.

44. Shop Managers are required to arrive between 6 and 6:30 AM to open the store, count inventory, and transmit data from the day before to their District Manager. During this short window before the store opens for business, Shop

Managers may also prepare schedules, update a labor report, and audit invoices from the day prior.

45. Once the store opens to the public, Plaintiffs and the other Shop Managers are required to be on the floor in one of the three positions or cleaning the store.

46. Plaintiffs and the other Shop Managers receive a base salary.

47. Plaintiffs and the other Shop Managers also receive commissions on net sales from their store.

48. If a store exceeds its KPI targets, a Shop Manager may also be entitled to a bonus.

49. On average, Plaintiffs and other Shop Managers earn between $14 and $15 per hour when considering their total hours worked.

50. Defendants did not pay overtime wages to Plaintiffs and the other Shop Managers.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF 29 U.S.C. § 207 (UNPAID OVERTIME)

51. All previous paragraphs are incorporated as though fully set forth herein.

52. Plaintiffs and the putative class members worked more than forty (40) hours in one or more workweeks.

53. Defendants failed or refused to compensate Plaintiffs and the other Shop Managers overtime wages calculated 1.5 times the regular rate for all hours worked.

54. Defendants violated 29 U.S.C. § 207 of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated Shop Managers.

55. Defendants knew their policy and practice for Shop Manager compensation violated the FLSA overtime provisions. Defendants acted willfully or with reckless disregard of the FLSA because Defendants knew its practice violated the law and continued implementing the unlawful practice.

56. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and those similarly situated seek unpaid overtime compensation plus liquidated damages in an equal amount.

WHEREFORE, Plaintiffs respectfully request the following relief on behalf of themselves and those similarly situated Shop Managers:

a. Pursuant to 29 U.S.C. § 216(b), an order of conditional certification authorizing notice to the perspective class and an opportunity to opt-in to the action.

b. A declaration that Defendants have violated the overtime provisions of 29 U.S.C. § 207;

c. Unpaid overtime wages;

d. Liquidated damages;

e. Attorney fees and costs pursuant to 29 U.S.C. § 216(b);

f. Any other relief this Court deems to be just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable as of right.

Dated: July 18, 2023

Respectfully submitted,

s/ Corey M. Stanton
Philip J. Gibbons, Jr.
NC Bar No.: 50276
Email: phil@gibbonslg.com
Corey M. Stanton
NC Bar No.: 56255
Email: corey@gibbonslg.com
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place
Ste. 325
Charlotte, NC 28277

Harold L. Lichten (to be admitted *pro hac vice*)
Email: hlichten@llrlaw.com
Olena Savytska (to be admitted *pro hac vice*)
Email: osavytska@llrlaw.com
**LICHTEN & LISS-RIORDAN, P.C.**
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800

Jason L. Gunter (to be admitted *pro hac vice*)
Email: Jason@GunterFirm.com
Conor P. Foley (to be admitted *pro hac vice*)
Email: Conor@GunterFirm.com
**GUNTERFIRM**
1514 Broadway, Suite 101
Fort Myers, FL 33901
Tel: 239.334.7017